IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE LEE BRIDGES,<br><br>          Petitioner,<br><br>vs.<br><br>D. L. RUNNELS, Warden,<br><br>          Respondent. | No. 2:03-cv-02338-JKS-KJM<br><br>ORDER |

Petitioner, a state prisoner proceeding *pro se*, has filed this application for a writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

On September 11, 2007, the Magistrate Judge filed Findings and Recommendations, which were served on all parties and which contained notice to all parties that any objections to the Findings and Recommendations were to be filed within twenty days. Petitioner has filed objections to the Findings and Recommendations.

In his objections, Petitioner raises nine points. (1) misapplication of the *Dixon*[1] rule;[2] (2) prosecutorial misconduct (suborning perjury of Agent Skeen and Print Examiner Philips);[3] (3) prosecutorial misconduct (tainted lineup card);[4] (4) prosecutorial misconduct (deceit about warrantless search);[5] (5) ineffective assistance of counsel (failure to call witnesses);[6] (6) ineffective assistance of counsel (failure to introduce evidence of bank loan);[7] (7) ineffective

---

[1] *In re Dixon*, 264 P.2d 513 (Cal. 1953).

[2] Findings and Recommendation, pp. 19–21.

[3] Findings and Recommendation, pp. 16, 21–25.

[4] Findings and Recommendations, pp. 17, 22-26.

[5] Findings and Recommendation, pp. 17–19.

[6] Findings and Recommendation, p. 20.

[7] Findings and Recommendation, pp. 21–22.

assistance of counsel (suborning perjury of Skeen and Philips);[8] (8) exclusion of evidence of third-party culpability;[9] and (9) actual innocence.[10]

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this Court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, with particular attention to those portions relevant or pertinent to the objections raised, the Court finds the Findings and Recommendations to be supported by the record and by proper analysis.

Objection 1 (*Dixon*). Petitioner does not argue that *Dixon* is not an adequate independent state law ground. Instead, Petitioner argues that the issues to which *Dixon* was applied were not raised on appeal because appellate counsel refused to raise them. Petitioner raised this point in his petition for habeas relief filed in the California Court of Appeal in April 2005 and, albeit somewhat obliquely, in his subsequent petition for review filed with the California Supreme Court. While it may form the basis for an ineffective assistance of counsel claim, Petitioner has not cited any California case that holds that the failure of appellate counsel to raise the issue constitutes sufficient special circumstances under *Dixon* to excuse the untimely filing, and independent research by the court has not found any such case. The California Supreme Court having denied review, this Court must assume that it considered and rejected Petitioner's argument under California law. It is also presumed that the state court knew and correctly applied state law. *See Walton v. Arizona,* 497 U.S. 639, 653 (1990) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas court cannot reexamine a state court's interpretation and application of state law).

2. Objections 2 (suborning perjury by prosecutor), 4 (deceit about warrantless search), and 7 (suborning perjury by trial counsel). As the Magistrate Judge found, even assuming that there was subornation of perjury and deceit regarding the warrantless search, there is no evidence in the record that either the prosecutor or the defense attorney were aware of these alleged improprieties. In his objections Petitioner refers to a video tape of the May 2000 interview by

---

[8] Findings and Recommendation, pp. 24–25.

[9] Findings and Recommendation, pp. 25–29.

[10] Findings and Recommendation, p. 32.

agent Skeen that would prove these points and asks this Court to obtain and review it.  The video tape is not contained in the state court record transmitted to this Court and there is no indication in the record that it was ever offered into evidence.  In his March 2005 application for habeas relief filed in the California Superior Court, Petitioner refers to the video tape but did not request an evidentiary hearing.  Petitioner does not refer to the video tape in his 2005 applications for habeas relief in either the California Court of Appeal or California Supreme Court.  Moreover, Petitioner does not mention the video tape of his interview in either his petition or traverse filed in this case.  The request that this Court obtain and view the video, raised for the first time in his objections to the Findings and Recommendations, is not only untimely but is precluded by the Antiterrorism and Effective Death Penalty Act of 1996.  *See* 28 U.S.C. § 2254(e)(2)(A)(ii) (precluding an evidentiary hearing in this Court unless the factual predicate could not have been previously discovered and presented to the state court through the exercise of due diligence).

With respect to the allegedly perjured testimony of the fingerprint expert, how her testimony constituted perjury is unexplained and inexplicable.  Nor is there any authority for the proposition that it is prosecutorial misconduct to fail to establish that fingerprint identification is subjective not objective.  In the absence of United States Supreme Court authority, a state court decision can not be contrary to, or an unreasonable application of, established federal law.  *See* 28 U.S.C. § 2254(d)(1).

   3. <u>Objection 3 (tainted lineup card)</u>.  The Magistrate Judge correctly interpreted the statement of the prosecutor as being his surmise as to what a hypothetical juror might think, not he, the prosecutor, was suggesting the lineup was tainted.  Petitioner has not argued, let alone offered any evidence, that the lineup was, in fact, tainted.

   4. <u>Objection 5 (failure to call witnesses)</u>.  Petitioner did not identify the witnesses in his petition in this Court.  Again, it was not until he filed his objections that Petitioner identified the witnesses.  Not only was this untimely, but what he offers as evidence is his own statement that simply recites that when interviewed five months after the incident neither witness could recall anything about the incident, let alone anything that would be helpful to Petitioner.  Counsel can hardly be faulted for failing to call witness who are unable to recall any relevant facts.

     5. <u>Objection 6 (failure to introduce evidence of a bank loan)</u>. Assuming that Petitioner had in fact obtained a loan of $2,500 from Bank of America, while one might logically argue that the loan was the source of the cash found in his room, absent Petitioner's testimony it is nothing more than conjecture. Petitioner did not testify. Moreover, as explained by counsel at the *Marsden* hearings,[11] the decision not to bring it up was a tactical decision based on Petitioner's failure to explain the bank loan to the investigators during his initial interview.[12]

     Neither *Strickland v. Washington,* 466 U.S. 668 (1984) nor its progeny mandate that the Court act as a "Monday morning quarterback" in reviewing tactical decisions. Indeed, the Supreme Court admonished in *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted):

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

The Court agrees with the Magistrate Judge that the failure of counsel to pursue the bank loan was a tactical decision outside the purview of ineffective assistance of counsel.

     6. <u>Objection 8 (third-party culpability)</u>. Petitioner's objection does not appear to contest the finding of the Magistrate Judge that the evidence was properly excluded because it had

---

[11] *People v. Marsden*, 465 P.2d 44 (Cal. 1970).

[12] Interestingly, in his objections, Petitioner asserts that he obtained the loan on a whim and did not need it. Had he so testified, it would have, as counsel surmised, severely undermined the explanation he gave the investigators at the initial interview as to the source of the $3,000 cash found in his possession, *i.e.*, that for about a year he had saved about half of his monthly income of $750 and added to his stash from gambling winnings.

ORDER
*Bridges v. Runnels,* 2:03-cv-02338-JKS-KJM      4

minimal, if any, probative value and significant potential for jury confusion.  Instead, Petitioner appears to complain that when Bush referred to the U.S. Bank the second time, they should have conducted further investigation into his purported "confession."  Suffice it to say that, at that juncture, there was no reasonable basis for assuming Bush might have robbed the bank.

       7.  <u>Objection 9 (actual innocence)</u>.  Petitioner requests this Court obtain and view the video of his May 8, 2000 interview by the investigating officers.  As discussed above, that request is untimely and precluded by AEDPA.  Moreover, the thrust of Petitioner's argument is directed to the admissibility of evidence (the $3,000 found in his room) and the credibility of one of the investigators.  It does not establish actual innocence.  Also, as the Magistrate Judge correctly noted, the "evidence" Petitioner proffers is not new evidence that was not available at trial.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

       Accordingly, IT IS HEREBY ORDERED THAT:

1. The Findings and Recommendations filed September 11, 2007, are adopted in full;
2. Petitioner's application for a writ of habeas corpus relief is DENIED; and
3. The Clerk of the Court to enter final judgment accordingly.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citations omitted)).  All federal constitutional issues, to the extent they were not procedurally defaulted, were addressed by the California courts on direct appeal or on the petitions to those courts for habeas relief, and no reasonable jurist could find that those decisions were "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

    Dated:  February 1, 2008

                                                  s/ James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                  United States District Judge